**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Sharon Washington,

        Plaintiff,

v.

AT&T Umbrella Benefit Plan No. 3,

        Defendant.

_____

Case No. 21-11397
District Judge Terrence G. Berg
Magistrate Judge Jonathan J.C. Grey

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

Sharon Washington brings this pro se action against AT&T Umbrella

Benefit Plan No. 3 (the "Program") under the Employee Retirement Income

Security Act of 1974. (ECF No. 1-1.) Washington applied for short-term

disability benefits through her employer's insurance plan in 2018 and 2019

for persistent depressive disorder and major depressive disorder, which the

Program denied.

On December 16, 2021, the Program moved for summary judgment.

(ECF No. 22.) Washington responded (ECF No. 23) and supplemented her

response with leave of the Court (ECF No. 30). The Program replied. (ECF

No. 31.) Having carefully reviewed the briefs, the Court finds that oral

argument will not aid in resolving the pending motions. E.D. Mich. LR 7.1(f)(2).

The Court **RECOMMENDS** that Washington's motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART** and that the Program's motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**.

On this record, the Court finds that (1) Sedgwick's denial of benefits for the July 16, 2018 to September 9, 2018 period was arbitrary and capricious and (2) Sedgwick's denial of benefits for the June 16, 2019 to August 20, 2019 period was arbitrary and capricious, and (3) Sedgwick's denial of benefits for the August 21, 2019 to November 3, 2019 period was not arbitrary and capricious. The Court **RECOMMENDS REMAND of** the claims for July 16, 2018 to September 9, 2018 and June 16, 2019 to August 20, 2019 to the plan administrator for a full and fair review of Washington's disability claim.

## I.    Factual Background

Washington is a 46-year-old maintenance administrator at Michigan Bell Telephone Company. (ECF No. 9, PAGEID. 147.) As an employee of Michigan Bell Telephone Company, Washington was a participant in the AT&T Midwest Disability Benefits Program, which AT&T Services, Inc.

administers. (ECF No. 22-1, PAGEID.799–800.) In turn, AT&T Services

Inc. delegated its duties to Sedgwick Claims Management Services, Inc.

("Sedgwick"). (*Id.* at PAGEID.800.) As a participant in the Program,

Washington was eligible to receive short-term disability benefits. (ECF No.

9, PAGEID.659–66.)

In 2018 and 2019, Washington submitted applications for short-term

disability benefits for persistent depressive disorder and major depressive

disorder respectively. (*Id.* at PAGEID.397, 600.)

The Program defines "disability" as follows:

> You are considered Disabled for purposes of Short-Term
> Disability Benefits if the Claims Administrator determines that
> you are Disabled by reason of sickness, pregnancy, or an off-the
> job illness or injury that prevents you from performing the duties
> of your job (or any other job assigned by the Company for which
> you are qualified) with or without reasonable accommodation.
> Your Disability must be supported by objective Medical
> Evidence.

(*Id.* at PAGEID.653.) The Program defines "Medical Evidence" as:

> Objective medical information sufficient to show that the
> Participant is Disabled, as determined at the sole discretion of the
> Claims Administrator. Objective medical information includes,
> but is not limited to, results from diagnostic tools and
> examinations performed in accordance with the generally
> accepted principles of the health care profession. In general, a
> diagnosis that is based largely or entirely on self-reported
> symptoms will not be considered sufficient to support a finding
> of Disability.

(*Id.* at PAGEID.690.) Additionally, the Program requires an employee seeking short-term disability benefits to "periodically furnish satisfactory Medical Evidence of [their] Disability from [their] Physician." (*Id.* at PAGEID.660.) The Program does not pay short-term disability benefits for any period during which the employee fails to furnish objective medical evidence. (*Id.* at 665.)

A.    **Washington's 2018 Claim**

   1.  **Sedgwick Grants Washington's Claim for June 15, 2018 through July 15, 2018**

On June 8, 2018, Washington applied for short-term disability benefits, citing persistent depressive disorder. (*Id.* at PAGEID.600, 611.) On June 18, 2018, Sedgwick approved Washington for conditional benefits from June 15, 2018 through June 24, 2018. (*Id.* at PAGEID.611.) In that correspondence, Sedgwick directed Washington to provide medical evidence by June 26, 2018. *Id.* On June 25, 2018, psychiatrist Dr. Raad Jajo submitted a physician statement and psychiatric evaluation report. (*Id.* at PAGEID.642–646.) Washington's Patient Health Questionnaire[1] ("PHQ-9") score was 21, which indicates severe depression. (*Id.* at PAGEID.646.)

---

[1] Patient Health Questionnaire is a diagnostic instrument for common mental disorders. Kurt Kroenke *et al.*, *The PHQ-9 Validity of a Brief Depression Severity Measure*, J. Gen. Internal Medicine (Sept. 2001),

On June 29, 2018, Sedgwick approved Washington's claim from June 15, 2018 through July 15, 2018. (*Id.* at 597–598.)

## 2. Sedgwick Denies Washington's Claim for July 16, 2018 through September 9, 2018

Sedgwick instructed Washington to provide updated medical documentation on or before July 13, 2018 to receive benefits after July 15, 2018. *Id.* On July 11, 2018, Dr. Jajo submitted (1) a letter, opining that Washington should remain off work until August 8, 2018 (*Id.* at PAGEID.592) and (2) notes from a July 5, 2018 appointment in which Dr. Jajo increased Washington's medications, stating that Washington's mental status had not improved and that she was unable to see a counselor because no appointments available for a month. (*Id.* at PAGEID.585–588). Washington's PHQ-9 score was 24. (*Id.* at PAGEID.585.) On July 25, 2018, Sedgwick called Dr. Jajo's office to ask if there was any additional information to submit, and the staff stated there was nothing further to provide. (*Id.* at PAGEID.462.)

---

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268/ ("In addition to making criteria-based diagnoses of depressive disorders, the PHQ-9 is also a reliable and valid measure of depression severity. These characteristics plus its brevity make the PHQ-9 a useful clinical and research tool."). The PHQ-9 score ranges from 0 to 27, with scores above 20 indicating severe depression. *Id.*

Sedgwick obtained an independent peer medical review from Dr. Lawrence Albers. (*Id.* at PAGEID.580–582, 569.) Dr. Albers prepared a report in which he reviewed Dr. Jajo's June 7, 2018 and July 5, 2018 notes. *Id.* He attempted to confer with Dr. Jajo two days prior to submitting his report, but Dr. Jajo did not return his call. (*Id.* at PAGEID.580.) In his report, Dr. Albers concluded that Washington is not disabled as of July 16, 2018, explaining that Washington's memory, concentration, and cognitive abilities are not impaired. (*Id.* at PAGEID.581.) Dr. Albers stated that there was no objective data illustrating the day-to-day impact of psychiatric symptoms. *Id.*

On August 6, 2018, Sedgwick notified Washington that they denied her short-term disability benefits claim from July 16, 2018 through her return-to-work date. (*Id.* at PAGEID.568.) On August 13, 2018, Dr. Jajo submitted notes from an August 8, 2018 visit, which noted that Washington "start[ed] seeing some progress" but still suffered from poor sleep, worries, and depression. (*Id.* at PAGEID.565, 557.)

On August 20, 2022, Sedgwick updated Washington on the status of her claim, explaining that they conducted a courtesy review of the August 8, 2018 notes from Dr. Jajo, even though they were received after Sedgwick had denied the claim. (*Id.* at PAGEID.557–558.) Sedgwick stated that its

decision remained unchanged because the additional documentation did "not provide clinical evidence to support disability." (*Id.* at PAGEID.557.)

### 3. Sedgwick Upholds Denial of Benefits on Appeal

On August 31, 2018, Washington appealed the denial of benefits for the period starting on July 16, 2018 to her return-to-work date. (*Id.* at PAGEID.550–551.) On September 5, 2018, Dr. Jajo submitted a letter in support of Washington's appeal, which recommended that Washington return to work on September 10, 2018 with no restrictions. (*Id.* at PAGEID.543.) The note also reported Washington's PHQ-9 score as 22 and that Washington's mental status was "agitated and restless." (*Id.* at PAGEID.544.) Washington then submitted her September 13, 2018 Family and Medical Leave Act ("FMLA") certification. (*Id.* at PAGEID.519–524.) In the certification, Dr. Jajo identified Washington's diagnoses as "serious" and found that Washington cannot perform job functions that require "intact mood and cognition," concluding that Washington would need continuous leave from July 16, 2018 to September 7, 2018 to receive treatment. (*Id.* at PAGEID.520, 522.)

Sedgwick obtained a second independent peer medical review from Dr. Tahir Tellioglu. (*Id.* at PAGEID.514–517.) Dr. Tellioglu prepared a report in which he reviewed (1) Dr. Jajo's notes, (2) Dr. Jajo's September 5,

2018 letter of support, and (3) Washington's appeal letter. (*Id.* at PAGEID.515.) He also attempted to confer with Dr. Jajo, but Dr. Jajo did not return his calls. (*Id.* at 514.) Dr. Tellioglu concluded that there was "insufficient objective observable data in the records reviewed to support a psychiatric disability or any need for restrictions or limitations." (*Id.* at PAGEID.516.) Washington did not respond to the report. (*Id.* at PAGEID.507.)

On November 2, 2018, Sedgwick notified Washington that it upheld its denial of benefits from July 16, 2018 to September 9, 2018 for lack of sufficient objective documentation. (*Id.* at PAGEID.498–499.)

## B. Washington's 2019 Claim

### 1. Sedgwick Grants Washington's Claim for April 15, 2019 to May 14, 2019

On April 8, 2019, Washington applied for short-term disability benefits, citing major depressive disorder. (*Id.* at PAGEID.397.) On April 15, 2019, Sedgwick approved Washington for conditional benefits through April 24, 2019. (*Id.* at PAGEID.404.) In that correspondence, Sedgwick directed Washington to substantiate her disability with medical evidence. *Id.* On April 17, 2019, family medicine physician Dr. Steven Istephan submitted documentation. (*Id.* at PAGEID.397–399.)

On May 13, 2019, Sedgwick approved Washington's claim from April 15, 2019 to May 14, 2019. (*Id.* at 376–377.)

### 2. Sedgwick Denies Washington's Claim for May 15 through November 3, 2019

On May 13, 2019, Sedgwick instructed Washington to provide updated medical documentation to receive benefits after May 14, 2019. *Id.* Washington did not submit additional information. (*Id.* at PAGEID.349.) On May 23, 2019, Sedgwick initially denied Washington benefits from May 15, 2019 to her return-to-work date. (*Id.* at PAGEID.349–351.)

Later that day, Washington submitted Dr. Istephan's May 14, 2019 note, which contained a diagnosis of severe episodes of recurrent major depressive disorder. (*Id.* at PAGEID.338–342.) On June 7, 2019, Washington submitted records of her May 3, 2019 and June 7, 2019 visits with psychiatrist Dr. Arielle Stone. (*Id.* at PAGEID.321–329.) In the May 3, 2019 note, Dr. Stone diagnosed Washington with major depressive disorder and post-traumatic stress disorder. (*Id.* at PAGEID.328.) In the June 7, 2019 note, Dr. Stone noted that Washington reported that although her depression had slightly improved, her memory issues had worsened, and she continued to be unable to afford therapy. (*Id.* at PAGEID.283.)

On June 14, 2019, Sedgewick updated Washington on the status of her claim, explaining that they conducted a courtesy review of the

documents submitted after their denial. (*Id.* at PAGEID.315–316.) Sedgwick stated that its decision remained unchanged because the additional documentation did not support a finding of disability. (*Id.* at PAGEID.315.)

Family medicine physician Dr. Ali Rida subsequently submitted a June 20, 2019 note, which stated that Washington reported increased depressive symptoms. (*Id.* at PAGEID.304.) On June 26, 2019, Dr. Rida submitted a letter, which reiterated Washington's diagnosis, symptoms, and PHQ-9 scores. (*Id.* at PAGEID.294.)

Dr. Stone submitted a July 13, 2019 note, which stated that Washington reported "no improvement[s]" in her depression and some improvements in her memory and concentration (*Id.* at PAGEID.279–282.)

### 3. Sedgwick Partially Reinstates Benefits and Partially Upholds Denial of Benefits on Appeal

On August 2, 2019, Washington appealed the denial of benefits for the period starting on May 15, 2019 to her return-to-work date. (*Id.* at PAGEID.277.) Dr. Stone submitted an August 20, 2019 note, which stated that Washington denied any improvement and that Dr. Stone increased Washington's medication dosage (*Id.* at PAGEID.264–267.)

Sedgwick obtained an independent peer medical review from Dr. Antoinette Acenas. (*Id.* at PAGEID.255–259.) On September 10, 2019, Dr. Acenas prepared a report. (*Id.* at PAGEID.256.) She attempted to confer

with Dr. Stone, Dr. Rida, and Dr. Istephan, but none of them returned her calls. (*Id.* at 255–256.) Dr. Acenas concluded that Washington is not disabled as of May 15, 2019 because of a lack of objective evidence and not following through with her physician's therapy recommendation. (*Id.* at PAGEID.258.)

On October 1, 2019, Dr. Stone submitted a September 24, 2019 note, which stated that Washington reported some improvement and that she started therapy. (*Id.* at PAGEID.234–237.) Dr. Stone also discussed with Washington the idea of entering a partial hospitalization program[2] ("PHP"). (*Id.* at PAGEID.236.) Later the same day, October 1, 2019, Washington objected to Dr. Acenas' report, stating that her doctor had referred her to a PHP. (*Id.* at PAGEID.238.)

On October 8, 2019, Dr. Acenas wrote an addendum to her report after reviewing (1) Dr. Stone's September 24, 2019 note and (2) Washington's response to Dr. Acenas' report. (*Id.* at PAGEID.229–230.) Dr. Acenas stated that her conclusion remained unchanged, noting that

---

[2] A PHP "provides a structured program of outpatient psychiatric services as an alternative to inpatient psychiatric care." Mental Health Care (Partial Hospitalization), *Your Medicare Coverage*, https://www.medicare.gov/coverage/mental-health-care-partial-hospitalization. This treatment solely occurs during the day. *Id.*

Washington's symptoms were not severe enough to cause functional impairments. *Id.*

On November 11, 2019, Washington responded to Dr. Acenas' addendum and attached a November 1, 2019 discharge document from the facility whose PHP she had entered. (*Id.* at PAGEID.202–206.) The discharge document listed a start date of October 14, 2019, indicating that Washington was in the PHP for three weeks.[3] (*See id.* at PAGEID.207–208.)

On November 13, 2019, Dr. Stone submitted a November 4, 2019 note, indicating that Washington reported improvements after the PHP. (*Id.* at PAGEID.198.) Dr. Stone recommended that Washington return to work on November 18, 2019 with a reduced schedule for two weeks and no restrictions thereafter. (*Id.* at PAGEID.200.)

Sedgwick obtained a second independent peer medical review from Dr. Elizabeth Pritchett. (*Id.* at PAGEID.186–193.) Dr. Pritchett attempted to confer with Dr. Stone, Dr. Rida, and Dr. Istephan, but none of them returned her calls. (*Id.* at 187–188.) Dr. Pritchett concluded that Washington was disabled from May 15, 2019 to June 15, 2019 and again from November 4, 2019 to November 17, 2019, finding a "long-standing, waxing and waning

---

[3] In later correspondence, Washington stated that she was in the PHP from October 14, 2019 to November 1, 2019. (ECF No. 9, PAGEID.163.) Dr. Stone also confirmed this three-week program in her November 13, 2019 note. (*Id.* at PAGEID.198.)

mood disturbance, with variable impact on functioning." (*Id.* at PAGEID.191.)

Dr. Pritchett also determined that Washington was not disabled from June 16, 2019 to November 3, 2019. (*Id.* at PAGEID.189.) Regarding the June 16, 2019 to August 20, 2019 period, Dr. Pritchett found there was no objective data to establish "psychiatric symptom severity" or "functional impact." (*Id.* at PAGEID.191.) Regarding the August 21, 2019 to November 3, 2019 period, Dr. Pritchett erroneously stated that there were no clinical notes for this period.[4] *Id.* Regarding the three-week PHP period from October 14 to November 1, 2019, Dr. Pritchett noted that the discharge document was insufficient "to certify all or part of this period." (*Id.* at PAGEID.192.)

On December 13, 2019, Washington responded to Dr. Pritchett's report, arguing that she was disabled for the full period because physicians had to frequently adjust her medications and that, contrary to Dr. Pritchett's assertion, the discharge document included the PHP start date. (*Id.* at PAGEID.163.)

On December 17, 2019, Sedgwick notified Washington that it would (1) reinstate benefits from May 15, 2019 to June 15, 2019, (2) uphold its

---

[4] Dr. Stone had submitted a September 24, 2019 note. (*Id.* at PAGEID.234–237.)

denial of benefits from June 16, 2019 to November 3, 2019 for lack of

sufficient objective documentation, (3) reinstate benefits from November 4,

2019 to November 17, 2019. (*Id.* at PAGEID.165–166.)

## II.   Standard of Review

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an

action "to recover benefits due to [them] under the terms of [their] plan, to

enforce [their] rights under the terms of the plan, or to clarify [their] rights to

future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Courts review a denial of benefits "under a de novo standard unless the

benefit plan gives the administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan."

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If "the

plan grants the administrator authority to determine eligibility for benefits or

to construe the terms of the plan," courts apply the highly deferential

arbitrary and capricious standard of review. *Yeager v. Reliance Standard

Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). Both parties argue that the

arbitrary and capricious standard applies.

Here, the arbitrary and capricious standard applies. The Program's

administrator delegated Sedgwick to be its claims administrator. (ECF No.

19, PAGEID.684, 689.) The Program provides that Sedgwick has "the sole

and absolute discretion to interpret the provisions of the Plan . . . [and] to make findings of fact, to determine the rights and status of [claimant] and others under the Plan." (*Id.* at PAGEID.721.) This language clearly confers discretion to Sedgwick. *Moss v. Unum Life Ins. Co.*, 495 F. App'x. 583, 590 n.2 (6th Cir. 2012).

Michigan law[5] proscribes the use of discretionary clauses in disability insurance contracts effective or revised after July 1, 2007, thereby imposing a de novo standard of review. Mich. Admin. Code R. 500.2201–2202. The regulation, however, does not apply to self-funded plans. *Moskal v. Aetna Life Ins. Co.,* 2012 WL 71845 *3 (E.D. Mich. Jan.10, 2012) (holding that Mich. Admin. Code R. 500.2202 does not invalidate discretionary clause in self-funded employee welfare plan). Because the Program is self-funded (ECF No. 9, PAGEID.692), it falls outside the scope of Mich. Admin. Code. R. 500.2201–500.2202, so the arbitrary and capricious standard applies.

The arbitrary and capricious standard of review is the "least demanding form of judicial review" in which a court must uphold a denial of benefits if it is "rational in light of the plan's provisions." *Monks v. Keystone Powdered Metal Co.*, 78 F. Supp. 2d 647, 657 (E.D. Mich. 2000) (citations

---

[5] Michigan law applies here because this case involves a policy issued in Michigan. Mich. Admin. Code R. 500.2202(b), (c).

omitted), aff'd, 10 F. App'x. 273 (6th Cir. 2001). Under an arbitrary and capricious standard, the Court will uphold Sedgwick's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id*. Even if "the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision is neither arbitrary nor capricious." *Schwalm v. Guardian Life Insurance Co.*, 626 F.3d 299, 308 (6th Cir. 2010).

Despite being highly deferential, "[t]he arbitrary-and-capricious . . . standard does not require us merely to rubber stamp the administrator's decision." *Jones v. Metropolitan Life Ins. Co.,* 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003)). The Court's task is to "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *McDonald,* 347 F.3d at 172. Finally, the Court considers only the evidence Sedgwick possessed at the time it determined the Washington's's disability eligibility. *Yeager*, 88 F.3d at 381.[6]

---

[6] On November 23, 2021, the Court denied Washington's motion to omit "irrelevant" parts of the administrative record from review. (ECF No. 20.)

## III.    Analysis

### A.    Medical Evidence of Disability

The Sixth Circuit has held that disability benefit plans may require a claimant to provide objective evidence of a disability. *See Cooper v. Life Ins. Co. of N. Am.,* 486 F.3d 157, 166 (6th Cir. 2007) (explaining that objective medical evidence would have assisted the plan administrator in determining whether the claimant was disabled). The Program here states, "Your Disability must be supported by objective Medical Evidence." (ECF No. 9, PAGEID.660.)

Where a plan requires "objective medical evidence," claimants must provide suitable evidence. *E.g.*, *Boone v. Liberty Life Assur. Co. of Bos.*, 161 F. App'x 469, 474 (6th Cir. 2005) (affirming denial of benefits for the absence of objective medical evidence); *Oody v. Kimberly-Clark Corp. Pension Plan*, 215 F. App'x 447, 452 (6th Cir. 2007) (affirming denial of disability benefits for lack of sufficient objective evidence).

The Program here specified:

> In general, a diagnosis that is based largely or entirely on self-reported symptoms will not be considered sufficient to support a finding of Disability. For example, reports of intense pain, standing alone, will be unlikely to support a finding of Disability, but reports of intense pain associated with an observable medical condition that typically produces intense pain could be sufficient.

(ECF No. 9, PAGEID.690.) Self-reported symptoms, although "generally" insufficient for the Program, are therefore not precluded from consideration.

The Court acknowledges that Washington's symptoms of persistent depressive disorder and major depressive disorder are generally self-reported. However, symptoms of psychiatric disorders are subjective by nature, and Sedgwick cannot ignore subjective complaints. *See Pierzynski v. Liberty Life Assur. Co. of Bos.*, No. 10-14369, 2012 WL 3248238, at *4 (E.D. Mich. Aug. 8, 2012) (stating that pain, although subjective, cannot be ignored by the plan administrator where the plan did not preclude consideration of subjective evidence). The Program clearly states that acceptable medical evidence is "is not limited to" the examples listed and indicates that subjective evidence will be considered. (ECF No. 9, PAGEID.690.)

Sedgwick thus had an obligation to take Washington's subjective complaints into account, which it did not do for either the 2018 or 2019 claims.

**B.    Sedgwick's Determination**

Washington argues that Sedgwick's determination was arbitrary and capricious because Sedgwick ignored favorable evidence from her treating physicians and selectively reviewed the evidence it did consider from her

treating physicians. The Program refutes this, arguing that Sedgwick thoroughly examined the record and obtained multiple peer reviews.

Washington further argues that Sedgwick failed to have Washington examined in person. The Program contends that there is no such requirement under the Program or ERISA.

### 1.    Washington's 2018 Claim

Sedgwick's denial of benefits for the July 16, 2018 to September 9, 2018 period was arbitrary and capricious. Although Sedgwick determined that there was insufficient objective medical documentation of Washington's disability, it failed to provide an adequate basis for its conclusion that Washington could perform her occupation despite her medical condition and failed to conduct its own physical examination.

First, Washington provided evidence in compliance with the Program's requirement. The Program defined "medical evidence" as information that sufficiently shows that the claimant is disabled, which includes "results from diagnostic tools and examinations." (*Id.* at PAGEID.690.) The Program does not require objective proof other than the records noted. In its denial letter, Sedgwick stated that "progress notes, specialist's evaluations . . . diagnostic test results . . . [or] mental assessment exam" would constitute acceptable evidence. (*Id.* at PAGEID.557.)

Washington submitted letters from her psychiatrist, Dr. Jajo, a FMLA

certification, and progress notes from appointments with Dr. Jajo, which

contained PHQ-9 scores, mental status examination results, and documented

increases in psychiatric medication. The mental status examinations noted

that Washington exhibited agitation, irritability, a tearful affect, and a

depressed mood. (*Id.* at PAGEID.539, 540, 544.) The reviewers, Dr. Albers

and Dr. Tellioglu, rejected Dr. Jajo's conclusions that Washington should

remain off work and that Washington could not perform job functions that

require "intact mood and cognition." Both reviewers concluded there was

insufficient objective data, but the Court finds that Washington complied

with the Program's language as to the evidence required to support her

disability claim. *See, e.g.*, *Godmar v. Hewlett-Packard Co.*, 631 F. App'x

397 (6th Cir. 2015).

The Court must determine whether Sedgwick provided an adequate

basis to conclude that Washington can perform her job as a maintenance

administrator. The Court first looks at the nature of Washington's job. *Elliott

v. Metro. Life Ins. Co.*, 473 F.3d 613, 618 (6th Cir. 2006) (finding that a

disability benefits decision is proper if it relied on evidence that assessed the

claimant's ability to perform job-related tasks). Maintenance administrators

have the occupational duties of sitting, typing, typing, and multitasking.

(ECF No. 9, PAGEID.454.) This includes communicating with customers through in-depth interviews and assisting technicians with troubleshooting. (*Id.* at PAGEID.515.)

A denial of benefits "can only be characterized as 'reasoned' if [the reviewer's report] provided an adequate basis to conclude that [the claimant] could perform her occupation despite her medical condition." *Elliot*, 473 F.3d at 619. In a denial letter, Sedgwick stated that the impact of Washington's psychiatric symptoms on her work functionality is insufficiently explained. (*Id.* at PAGEID.498.)

The medical records indicate that Washington exhibited sadness, irritability, tearfulness, agitation, restlessness, tension, and worries, and lack of motivation; she had crying spells, poor energy, insomnia, and poor focus. (*Id.* at PAGEID.540, 544, 585, 644.) Washington's work also caused her stress. (*Id.* at PAGEID.544.) Dr. Jajo concluded that Washington was unable to return to work, explaining that Washington could not perform work that required "intact mood and cognition." (*Id.* at PAGEID.522.) Given Washington's symptoms and Dr. Jajo's assessment, the Court cannot ascertain whether Sedgwick provided an adequate basis to conclude that Washington could perform her job despite her medical condition.

Second, Sedgwick solely relied on file reviews and improperly made credibility determinations. "The Sixth Circuit has never held that an administrator must undertake an [independent medical examination] before denying benefits." *White v. Standard Ins. Co.*, 895 F. Supp. 2d 817, 849 (E.D. Mich. 2012), aff'd, 529 F. App'x 547 (6th Cir. 2013). However, the Sixth Circuit has also held that "the failure to conduct a physical examination—especially where the right to do so is explicitly reserved in the plan—may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert v. Firstar Fin. Inc.*, 409 F.3d 286, 296 (6th Cir. 2005). Here, the Program reserved the right for a physician to conduct a medical examination if Sedgwick found it necessary. (ECF No. 9, PAGEID.665.)

No reviewer evaluated Washington in person, but both made credibility determinations. The reviewers' opinions carry less weight "since they did not interview or spend time with [Washington] to understand her symptoms." *RM v. Sun Life Assur. Co. of Canada*, No. 12-15375, 2014 WL 4869659, at *6 (E.D. Mich. Sept. 30, 2014). Courts have rejected reviewers' file review opinions regarding psychiatric diagnoses:

> Psychiatric opinions are inherently subjective. *See Westphal v. Eastman Kodak Co.*, 2006 WL 1720380, at *4–5 (W.D.N.Y. June 21, 2006) (a proper psychiatric diagnosis requires personal evaluation of the patient's credibility and affect). Compared to a

> doctor treating physical symptoms, a psychiatrist must treat a
> patient's subjective symptoms by interviewing the patient and
> spending time with the patient as to understand and treat the
> subjective symptoms described by the [patient.] *See Smith v.
> Bayer Corp. Long Term Disability Plan*, 444 F. Supp. 2d 856,
> 873 (E.D. Tenn. 2006), aff'd in part, vacated in part, 275 F.
> App'x. 495, 505–09 (6th Cir. 2008) (attaching little significance
> to file reviews in the context of psychiatric evaluations because
> the specialty is dependent upon interviewing and spending time
> with patients); *Javery v. Lucent Technologies, Inc.*, 741 F.3d 686,
> 702 (6th Cir. 2014).

*Sun Life Assur. Co.*, 2014 WL 4869659, at *6.

The reviewers' credibility determinations raise questions about the

thoroughness of the benefits determination. The Sixth Circuit has repeatedly

found that credibility determinations made without medical examinations are

arbitrary and capricious. *Smith v. Cont'l Cas. Co.,* 450 F.3d 253, 263–64

(6th Cir. 2006) (holding that file review was insufficient to determine the

credibility of pain); *Helfman v. GE Grp. Life Assur. Co.*, 573 F.3d 383, 395

(6th Cir. 2009) (holding that file review was insufficient when the

administrator rejected stress complaints for being subjective); *Shaw v. AT&T

Umbrella Ben. Plan No. 1*, 795 F.3d 538, 550 (holding that file review was

insufficient when a reviewer discounted medical records for being based on

"subjective complaints").

Here, both reviewers made credibility determinations. Dr. Tellioglu

characterized Washington's records as "not convincing documentation of a

psychiatric disability" because Washington's symptoms are "mainly self-reported." (ECF No. 9, PAGEID.517.) Dr. Albers similarly noted "subjective symptomology." (*Id.* at PAGEID.581.) Without examining Washington, Sedgwick should not have made a credibility determination about Washington's psychiatric symptoms. Because persistent depressive disorder is not easily objectively verified, Sedgwick's decision to discount Washington's subjective symptoms without a medical examination supports a finding that its decision was arbitrary and capricious.

In discounting Washington's subjective symptoms, Sedgwick also discounted her treating physician's opinion. The opinions of treating physicians are not entitled to special weight. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003) (stating that the "treating physician rule," under which the opinions of treating physicians are entitled to special weight, does not apply to medical evidence in ERISA cases). However, plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, including treating physician opinions. *Id.* at 538 U.S. 834. Sedgewick disagreed with Dr. Jajo's conclusion that Washington was unable to return to work because her symptoms were self-reported. This again raises questions as to the thoroughness of Sedgwick's decision.

Based on this review of Sedgwick's decision-making process, the Court finds that the denial of benefits for the July 16, 2018 to September 9, 2018 period was arbitrary and capricious. Although none of the foregoing reasons is dispositive alone, the Court finds that "as a whole, they support a finding that [Sedgwick] did not engage in a deliberate and principled reasoning process." *Helfman*, 573 F.3d at 396.

### 2.     Washington's 2019 Claim

The Court finds that (1) Sedgwick's denial of benefits for the June 16, 2019 to August 20, 2019 period was arbitrary and capricious and (2) Sedgwick's denial of benefits for the August 21, 2019 to November 3, 2019 period was not arbitrary and capricious.

For the decision regarding the period from June 16, 2019 to August 20, 2019, the Court cannot find that the plan administrator engaged in a principled reasoning process. Although Sedgwick determined that there was insufficient objective medical documentation of Washington's disability, it failed to provide an adequate basis for its conclusions, had internal inconsistencies, and failed to conduct its own physical examination.

First, one of the peer reviewers selectively reviewed the record. An administrator acts arbitrarily and capriciously when it selectively reviews the record to justify the denial of benefits. *Metro Life Ins. Co. v. Conger*, 474

25

F.3d 258, 265 (6th Cir. 2007). In her report, Dr. Acenas stated that

Washington was noncompliant with Dr. Stone's recommendation of therapy.

(ECF No. 9, PAGEID.258.) Dr. Acenas used this alleged noncompliance to

support her conclusion that Washington was not psychiatrically impaired. *Id.*

However, the record shows that Washington had financial difficulties that

forced her to "choose between medical treatments" and that Dr. Stone

recommended that Washington meet a therapist "when financially possible."

(*Id.* at PAGEID.279, 281.) In *Shaw*, the Sixth Circuit found that the plan did

not require the plaintiff to pursue a "more aggressive treatment

recommended by doctors" to be eligible for benefits. *Shaw*, 795 F.3d at 549–

550. The Sixth Circuit concluded that the reviewer's conclusion that the

plaintiff was noncompliant with medical advice constituted a selective

review of the record. *Id.* Dr. Acenas thus conducted a selective review by

ignoring Washington's inability to afford recommended treatment.[7]

Second, Sedgwick's decision contains several internal inconsistencies.

A plan's decision can be overturned for internal inconsistencies. *Magdziak v.

Metro. Life Ins. Co.*, 920 F. Supp. 2d 782, 790 (E.D. Mich. 2013). Here, Dr.

---

[7] Although the final denial letter only mentions Dr. Pritchett's report (ECF No. 9, PAGEID.165), Dr. Pritchett's report indicates that it reviewed "all information submitted," including Washington's objection to Dr. Acenas' report. (*Id.* at PAGEID.188.)

Pritchett recommended reinstatement of benefits for the immediately preceding period (May 15, 2019 to June 15, 2019) to "allow for the addition/efficacy of multiple medications." (*Id.* at PAGEID.190.) The same facts are true in the period in question: (1) on July 13, 2019, Dr. Stone discontinued some medications, increased other medication dosages, and started a new medication for Washington (*Id.* at PAGEID.281); and (2) on August 20, 2019, Dr. Stone increased the dosage of a medication (*Id.* at PAGEID.266) Dr. Pritchett fails to explain why these changes do not lead the same conclusion that time is needed to allow for the efficacy of medication changes.

Additionally, Dr. Pritchett recommended denial of benefits because Dr. Stone's treatment plan, which requested that Washington to return after four to six weeks, "[did] not reflect the intensity of treatment associated with psychiatric disability from work for this length of time." (*Id.* at PAGEID.190.) In the preceding period for which Dr. Pritchett recommended reinstatement of benefits, Dr. Istephan had recommended that Washington "continue to follow [up] with psychiatry" (*Id.* at PAGEID.341) and Dr. Stone had recommended that Washington return to the clinic in four weeks (*Id.* at PAGEID.285). Dr. Pritchett again fails to explain why a similar

treatment plan does not lead to the same conclusion that benefits should be awarded.

Third, Washington provided evidence in compliance with the Program's requirement. Washington submitted progress notes from appointments with Dr. Rida and Dr. Stone and a letter from Dr. Rida, which contained PHQ-9 scores, psychiatric examination results, and documented increases in psychiatric medication. The objective section of the June 20, 2019 note, Dr. Rida stated that Washington exhibited "a visibly depressed mood" and was "tearful throughout [the] interview." (*Id.* at PAGEID.306.) Dr. Stone similarly identified "psychomotor retard[ation]" and a "depressed" affect and mood at the July 13, 2019 appointment where Washington came in pajamas. (*Id.* at PAGEID.280.) The reviewers, Dr. Acenas and Dr. Pritchett, concluded that there was "no objective data" to support a finding of functional impairment, but the Court finds that Washington complied with the Program's language as to the evidence required to support her disability claim.

Turning to the nature of Washington's job, Washington has the same occupational duties as she did in 2018, including communicating with customers and assisting technicians. (*Id.* at PAGEID.258, 188.) In its final denial letter, Sedgwick stated that the record contained no objective data to

establish a functional impact and that Washington's treatment plan did not

reflect the requisite intensity of treatment, echoing Dr. Pritchett's report.

(ECF No. 9, PAGEID.165–166.) However, the medical records indicate that

Washington exhibited these symptoms: psychomotor retardation, decreased

activities of daily living (including grocery shopping and cooking for her

children), passive death wishes, low energy, low motivation, poor

concentration, and increased anxiety while driving based upon her history of

car accidents. (*Id.* at PAGEID.279, 264, 326.) Given these records, it is

difficult to ascertain whether Sedgwick provided an adequate basis to

conclude that Washington could perform her occupation despite her medical

condition.

Finally, although administrators are not required to examine claimants

in person, the reviewers' credibility determinations raise questions "about

the thoroughness and accuracy of the benefits determination." *Calvert*, 409

F.3d at 296. As discussed above, psychiatric opinions are inherently

subjective and may require personal evaluation. *Sun Life Assur. Co.*, 2014

WL 4869659, at *6. No reviewer evaluated Washington in person, but both

made credibility determinations. Dr. Acenas stated that Washington's

symptoms are "self-reported" (ECF No. 9, PAGEID.259) and Dr. Pritchett

similarly noted "subjective symptoms" (*Id.* at PAGEID.190). In discounting

Washington's subjective symptoms, Sedgwick also discounted her treating physicians' opinions. Because major depressive disorder is not easily objectively verified, Sedgwick's decision to solely conduct a file review supports a finding that its decision was arbitrary and capricious.

Based on this review of Sedgwick's decision-making process, the Court finds that the denial of benefits for the June 16, 2019 to August 20, 2019 was arbitrary and capricious. Although none of the foregoing reasons is dispositive alone, the Court finds that "as a whole, they support a finding that [Sedgwick] did not engage in a deliberate and principled reasoning process." *Helfman v*, 573 F.3d at 396.

For the period from August 21, 2019 to November 3, 2019, Washington did not provide sufficient objective medical evidence. Washington provided only one note and a PHP discharge document. The note was from September 24, 2019, in which Dr. Stone stated that Washington reported slight improvements, although her mood remained depressed. (ECF No. 9, PAGEID.234.) For the three-week PHP period starting on October 14, 2019, Washington submitted a discharge document, which only certifies that Washington had been in a PHP. It is unclear from the document how much time Washington spent in the PHP—whether it was a few hours weekly or many hours daily. Dr. Stone's note and the discharge

document do not show that disability prevented Washington from performing her job duties during this period. Washington thus did not provide sufficient objective medical evidence to establish disability for this latter period.

## IV.  Conclusion

The Court **RECOMMENDS** that Washington's motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART** and that the Program's motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**. On this record, the Court finds that (1) Sedgwick's denial of benefits for the July 16, 2018 to September 9, 2018 period was arbitrary and capricious and (2) Sedgwick's denial of benefits for the June 16, 2019 to August 20, 2019 period was arbitrary and capricious, and (3) Sedgwick's denial of benefits for the August 21, 2019 to November 3, 2019 period was not arbitrary and capricious.

"[W]here the 'problem is with the integrity of the plan's decision-making process,' rather than that a claimant was denied benefits to which he was clearly entitled, the appropriate remedy generally is remand to the plan administrator." *Elliott*, 473 F.3d at 622 (citation and brackets omitted). Accordingly, the Court further **RECOMMENDS** that the claims for July 16, 2018 to September 9, 2018 and June 16, 2019 to August 20, 2019 be

**REMANDED** to Sedgwick to conduct a full and fair review of

Washington's disability claim.

Dated:   June 28, 2022                s/**Jonathan J.C. Grey**
                                       Jonathan J.C. Grey
                                       United States Magistrate Judge

## Notice to the Parties About Objections

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System on June 28, 2022.

<u>s/ **S. Osorio**</u>
Sandra Osorio
Case Manager