UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **SHARON WASHINGTON,** | 2:21-CV-11397-TGB-JJCG |
| Plaintiff, | HON. TERRENCE G. BERG<br>HON. JONATHAN J. C. GREY |
| vs. | |
| **AT&T UMBRELLA BENEFIT PLAN NO. 3,** | **ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION (ECF NO. 32)** |
| Defendant. | |

This matter is before the Court on Magistrate Judge Jonathan J.C. Grey's Report and Recommendation of June 28, 2022, recommending that Plaintiff Sharon Washington's motion for summary judgment be granted in part and denied in part and that Defendant AT&T Umbrella Benefit Plan No. 3's, motion for summary judgment be granted in part and denied in part. ECF No. 32, PageID.915.

For the reasons that follow, Judge Grey's Report and Recommendation will be accepted in part and rejected in part. The Plan's denial of benefits between July 16, 2018, and September 9, 2018, was not arbitrary and capricious. The Plan's denial of benefits between June 16, 2019, and August 20, 2019, was arbitrary and capricious, and the Plan's

1

denial of benefits between August 21, 2019, and November 3, 2019, was arbitrary and capricious.  The Court will remand Washington's claims for the period from June 16, 2019, to August 20, 2019, and August 21, 2019, to November 3, 2019, to the plan administrator for a full and fair review.

## I.    BACKGROUND

Plaintiff Washington is a maintenance administrator at Michigan Bell Telephone Company and participated in the AT&T Midwest Disability Benefits Program operated by AT&T Services, Inc. Admin. Record, ECF No. 9, PageID.147. AT&T delegated authority as the plan administrator to Sedgwick Claims Management Services, Inc. ("Sedgwick"). Report and Recommendation, ECF No. 32, PageID.927.[1] The Plan contains a discretionary clause. *Id.* at PageID.927-28. As Magistrate Judge Grey explained, though Michigan law prohibits such clauses in most disability benefits plans, they are valid when imposed by the terms of self-funded plans, such as the plan at issue here. *Id.* So the plan administrator here is entitled to the deferential "arbitrary and capricious" standard of review.

In 2018, Washington applied for short-term disability benefits for persistent depressive disorder, and in 2019, she applied for benefits for major depressive disorder. ECF No. 9, PageID.397, 600. The Plan defines "disability" as follows:

---

[1] No party objected to the "Factual Background" section of Judge Grey's Report and Recommendation.

> You are considered Disabled for purposes of Short-Term Disability Benefits if the Claims Administrator determines that you are Disabled by reason of sickness, pregnancy, or an off-the job illness or injury that prevents you from performing the duties of your job (or any other job assigned by the Company for which you are qualified) with or without reasonable accommodation. Your Disability must be supported by objective Medical Evidence.

*Id.* at PageID.660. The Plan defines "Medical Evidence" as:

> Objective medical information sufficient to show that the Participant is Disabled, as determined at the sole discretion of the Claims Administrator. Objective medical information includes, but is not limited to, results from diagnostic tools and examinations performed in accordance with the generally accepted principles of the health care profession. In general, a diagnosis that is based largely or entirely on self-reported symptoms will not be considered sufficient to support a finding of Disability.

*Id.* at PageID.690. Against this backdrop, Plaintiff Washington filed two claims, one in 2018 and one in 2019.

## A. Plaintiff's 2018 Claim

### a. Sedgwick grants Washington's claim for the period from June 15, 2018 through July 15, 2018.

On June 8, 2018, Washington applied for short-term disability benefits, citing persistent depressive disorder. *Id.* at PageID.600, 611. Sedgwick approved Washington for benefits from June 15, 2018, through June 24, 2018. *Id.* at PageID.612. On June 25, 2018, her psychiatrist Dr.

Raad Jajo submitted a physician statement and psychiatric evaluation report. *Id.* at PageID.640-646.

### b. Sedgwick denies Washington's claim for the period from July 16, 2018 through September 9, 2018

Sedgwick directed Washington to provide updated medical documentation on or before July 13, 2018 to continue to receive benefits. *Id.* at PageID.597. Dr. Jajo, Washington's treating doctor, submitted a letter, opining that Washington should remain off work until August 8, 2018, *id.* at PageID.592, and notes from a July 5, 2018, appointment in which Dr. Jajo increased Washington's medications. *Id.* at PageID.585-88. He further noted that Washington's mental status had not improved and that she was unable to see a counselor because no appointments were available for a month. *Id.* Washington's PHQ-9 score was 24, indicating severe depression. *Id.* at PageID.585.[2]

Dr. Lawrence Albers performed an independent review for Sedgwick, in which he reviewed Dr. Jajo's notes. *Id.* at PageID.580-82. Dr. Albers's report concluded that Washington was not disabled as of July 16, 2018, and that her memory, concentration, and cognitive abilities were not impaired. *Id.* at PageID.581. Dr. Albers stated that there was

---

[2] As Judge Grey explained, the "Patient Health Questionnaire is a diagnostic instrument for common mental disorders. Report and Recommendation, ECF No. 32, PageID.917 (citing Kurt Kroenke *et al.*, *The PHQ-9 Validity of a Brief Depression Severity Measure*, *J. Gen. Internal Medicine* (Sept. 2001)). A score over 20 represents severe depression.

no "objective data" illustrating the day-to-day impact of Washington's psychiatric symptoms. *Id.*

On August 6, 2018, Sedgwick notified Washington that they had denied her short-term disability benefits claim from July 16, 2018, through her return-to-work date. *Id.* at PageID.568. On August 13, 2018, Dr. Jajo submitted notes from an August 8, 2018, visit noting that Washington "start[ed] seeing some progress" but still suffered from poor sleep, worries, and depression. *Id.* at PageID.565. Sedgwick considered Dr. Jajo's notes, but remained convinced that Washington was not entitled to benefits. *Id.* at PageID.557.

### c. Sedgwick upholds its denial on appeal

Washington appealed the denial of benefits for the period from July 16, 2018, to her return-to-work date. *Id.* at PageID.550-551. Dr. Jajo submitted a letter in support of Washington's appeal recommending that Washington return to work on September 10, 2018, with no restrictions. *Id.* at PageID.543. The note also reported Washington's PHQ-9 score as 22 and that Washington's mental status was "agitated and restless." *Id.* at PageID.544. In other submissions, Dr. Jajo identified Washington's diagnoses as "serious" and found that Washington could not perform job functions that required "intact mood and cognition," concluding that Washington would need continuous leave from July 16, 2018, to September 7, 2018, to receive treatment. *Id.* at PageID.520-522.

Dr. Tahir Tellioglu performed a second file review for Sedgwick. *Id.* at PageID.514-517. Ultimately, Dr. Tellioglu concluded that there was "insufficient objective observable data in the records [he] reviewed to support a psychiatric disability or any need for restrictions or limitations." *Id.* at PageID.516. In November, Sedgwick notified Washington that it would uphold its denial of benefits from July 16, 2018, to September 9, 2018, citing a lack of sufficient objective documentation. *Id.* at PageID.498-499.

## B. Washington's 2019 Claim
### a. Sedgwick approves Washington's claim for the period from April 15 through May 14

On April 8, 2019, Washington applied for short-term disability benefits for major depressive disorder. *Id.* at PageID.395-99. Sedgwick approved Washington for benefits through April 24, 2019. *Id.* at PageID.403-404. That same day, Sedgwick told Washington to provide more medical evidence of her disability. *Id.* After Washington's physician, Dr. Steven Istephan, submitted additional information, Sedgwick approved Washington's claim from April 15 to May 14, 2019. *Id.* at PageID.376-77, 397-399.

### b. Sedgwick denies Washington's claim for the period from May 15 through November 3, 2019

On May 13, 2019, Sedgwick told Washington to provide updated documentation to continue receiving benefits after May 14, 2019. *Id.* at PageID.376.Washington again only submitted updated documentation

after Sedgwick denied her benefits: on May 23, 2019, Sedgwick denied Washington benefits from May 15, 2019 to her return-to-work date. *Id.* at PageID.349-351. Later that day, Washington submitted a note from Dr. Istephan which contained a diagnosis of severe episodes of recurrent major depressive disorder. *Id.* at PageID.338-342. Washington later submitted records of two visits with psychiatrist Dr. Arielle Stone. *Id.* at PageID.321-329. In a May note, Dr. Stone diagnosed Washington with severe major depressive disorder with anxious distress and post-traumatic stress disorder. *Id.* at PageID.328. In a June note Dr. Stone confirmed that Washington reported that, although her depression had improved slightly, her memory issues had worsened, and she was still unable to afford therapy. *Id.* at PageID.283.

Sedgwick reviewed the belatedly-submitted documents, but still concluded that Washington was not disabled. *Id.* at PageID.315-316. About a week later, Dr. Ali Rida submitted a June 20, 2019, note which stated that Washington reported depressive symptoms, and that Washington's medication dosages had recently been increased. *Id.* at PageID.304. A week later, Dr. Rida submitted another letter reiterating Washington's diagnosis, symptoms, and PHQ-9 scores. *Id.* at PageID.294-95. Dr. Stone submitted a July 13, 2019, note, which stated that Washington reported no improvements in her depression and some improvements in her memory and concentration *Id.* at PageID.279-282.

7

### c. Sedgwick partially reinstates benefits and partially upholds its denial on appeal

Washington appealed the denial of benefits for the period from May 15, 2019 to her return-to-work date. *Id.* at PageID.277. In support, Dr. Stone submitted an August 21, 2019 note stating that Washington had denied any improvement and that Dr. Stone had increased the dosage of some of Washington's medications *Id.* at PageID.264-267.

Dr. Antoinette Acenas performed a filed review for Sedgwick. *Id.* at PageID.255-259. Dr. Acenas prepared a report in early September, 2019 concluding that Washington was not disabled as of May 15, 2019, because of a lack of objective evidence and a failure to follow her physician's recommendation to undergo therapy. *Id.* at PageID.258.

In the first week of October, Dr. Stone submitted a note explaining that Washington had reported some improvement and  started therapy. *Id.* at PageID.234-237. Dr. Stone also noted the possibility of Washington entering a "partial hospitalization program" ("PHP"). *Id.* at PageID.236. A few days later, Dr. Acenas wrote an addendum to her report in light of the note, but maintained her earlier conclusion, noting that Washington's symptoms were not severe enough to cause functional impairments. *Id.* at PageID.229-232.

In early November, Washington responded to Dr. Acenas' addendum and attached a discharge document indicating that Washington had been in a PHP for about three weeks from October 14,

2019 to November 1, 2019. *Id.* at PageID.202-208. Dr. Stone also submitted a note indicating that Washington reported improvements after the PHP. *Id.* at PageID.198. Dr. Stone recommended that Washington return to work on November 18, 2019, with a reduced schedule for two weeks and no restrictions thereafter. *Id.* at PageID.200.

Dr. Elizabeth Pritchett performed another file review for Sedgwick. *Id.* at PageID.186-193. Dr. Pritchett concluded that Washington was disabled from May 15, 2019, to June 15, 2019, and again from November 4, 2019, to November 17, 2019, finding a "long-standing, waxing and waning mood disturbance, with variable impact on functioning." *Id.* at PageID.191. But Dr. Pritchett further determined that Washington was not disabled from June 16, 2019, to November 3, 2019, because there was no objective data to establish "psychiatric symptom severity" or "functional impact." *Id.* at PageID.189-191. Dr. Pritchett noted that while the PHP "would suggest worsening symptoms and [the] need for a higher level of care," the PHP discharge document was insufficient "to certify all or part of this period." *Id.* at PageID.192.

On December 13, 2019, Washington responded to Dr. Pritchett's report, arguing that she was disabled for the full period because physicians had to frequently adjust her medications and that, contrary to Dr. Pritchett's assertion, the discharge document included the PHP start date. *Id.* at PageID.163.

Sedgwick ultimately determined that it would reinstate benefits from May 15, 2019, to June 15, 2019, uphold its denial of benefits from June 16, 2019, to November 3, 2019 for lack of sufficient documentation, and reinstate benefits from November 4, 2019, to November 17, 2019. *Id.* at PageID.165-166.

## II.   STANDARD OF REVIEW

The law provides that either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendation. 28 U.S.C. § 636(b)(1). Defendant timely objected. ECF No. 34.[3] Plaintiff did not timely object, but filed a response to Defendant's objections. *See* ECF No. 36. That response was late, and also purports to raise two objections to the Magistrate Judge's Report and Recommendation. Defendant asks that Plaintiff's response be struck. ECF No. 37. But in the interest of deciding the important issues in this case on the merits rather than because they were not timely raised, and because Plaintiff Washington is a pro-se litigant entitled to certain leniency, the Court declines to strike Plaintiff Washington's response or objections.

This Court must conduct a de novo review of the parts of a report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part,

---

[3] Defendant's motions requesting an extension of time to file objections (ECF Nos. 33, 35) will be denied as moot.

10

the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id*.

### III.   ANALYSIS
#### a. Defendant's Objections
##### i. Defendant's Objection 1

First, the Plan contends that Judge Grey failed to properly apply the Plan's definition of disability and its requirement that disability claims be supported by objective medical evidence. That a plan be enforced as written is "the linchpin" of ERISA. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013). So where a plan requires "objective medical evidence," claimants must provide such evidence. *See, e.g.*, *Boone v. Liberty Life Assur. Co. of Bos.*, 161 F. App'x 469, 473-74 (6th Cir. 2005) (affirming denial of benefits for the absence of objective medical evidence as required by the plan); *Oody v. Kimberly-Clark Corp. Pension Plan*, 215 F. App'x 447, 452 (6th Cir. 2007) (affirming denial of disability benefits for lack of sufficient objective evidence).

Here, the Plan defines what sort of evidence the Plan Administrator must consider: "objective Medical Evidence." Such evidence "includes but is not limited to, results from diagnostic tools and examinations[.]" ECF No. 9, PageID.690. Though the definition explains that "[i]n general, a diagnosis based largely or entirely on self-reported symptoms will not be considered sufficient to support a finding of Disability," *id.,* Judge Grey

correctly recognized that, while self-reported symptoms will "generally" be insufficient to support a disability finding, they are not excluded from consideration by the Plan's terms. ECF No. 32, PageID.931.

As with other psychiatric disorders, Washington's symptoms of persistent and major depressive disorder are generally self-reported. So Sedgwick cannot ignore the subjective complaints that accompany Washington's claimed condition. *See Pierzynski v. Liberty Life Assur. Co. of Bos.*, No. 10-14369, 2012 WL 3248238 at *4 (E.D. Mich. Aug. 8, 2012) (stating that pain, although subjective, cannot be ignored by the plan administrator where the plan did not preclude consideration of subjective evidence). The Plan explicitly states that acceptable medical evidence "is not limited to" the examples listed and indicates that subjective evidence may be considered by the plan administrator. ECF No. 9, PageID.690. Of course, the terms of the Plan do not require the Plan Administrator to credit Washington's subjective reports of her symptoms over and above "diagnostic tools and examinations," but Sedgwick may not *ignore* such reports.

### ii. Defendant's Objection 2

The Plan argues that Judge Grey inappropriately concluded that Sedgwick should have given more weight to Washington's treating physicians than to the doctors who performed file reviews on Sedgwick's behalf. It is a well-established principle of ERISA law that a plan administrator need not afford a claimant's treating physician any

"special weight." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). By the same token, however, the Sixth Circuit has "repeatedly cautioned that plan administrators should not make credibility determinations concerning the patient's subjective complaints without the benefit of a physical examination." *Guest-Marcotte v. Life Ins. Co. of N. Am.*, 730 F. App'x 292, 302 (6th Cir. 2018) (internal marks and citation omitted).

### iii. Defendant's Objection 3

The Plan's third objection is that Judge Grey erroneously found that because Sedgwick did not conduct an in-person examination of Washington, its denials were arbitrary and capricious. Judge Grey found that Sedgwick's reviewers' opinions should be entitled to less weight "since they did not interview or spend time with [Washington] to understand her symptoms." ECF No. 32, PageID.635 (quoting *RM v. Sun Life Assur. Co. of Canada*, No. 12-15375, 2014 WL 4869659, at *6 (E.D. Mich. Sept. 30, 2014)).

The Plan argues that Sedgwick did not make a credibility assessment when it determined that Washington's subjective reports of depression did not constitute sufficient objective evidence of disability. But such arguments have been rejected by the Sixth Circuit:

> LINA responds that it did not make a credibility determination: while LINA concedes that [claimant] subjectively feels pain, it maintains that she nevertheless failed to prove through objective evidence how her pain renders her

> unable to do her job. In other words, LINA argues
> that it could reasonably accept [claimant]'s
> subjective reports of pain, yet still demand that
> she produce objective evidence of how that pain
> limited her functionality. This logic is flawed,
> however, because [claimant]'s fundamental claim
> is that her pain is so severe and persistent that it
> precludes her from sitting still and concentrating
> long enough to do her desk job. To deny her
> benefits, LINA necessarily had to disbelieve this
> claim, and that is the essence of a credibility
> determination.

*Guest-Marcotte*, 730 F. App'x at 302. While Sedgwick  was not required
to conduct an independent examination of Washington, it was not
improper to conclude that Sedgwick's analysis was arbitrary and
capricious in part because no such examination was performed under the
circumstances presented here.

### iv.   Defendant's Objection 4

Finally, the Plan argues that Washington failed to comply with the
local rules and practice guidelines of the Eastern District of Michigan in
her briefing on the motions at issue here. The filings of self-represented
parties, "however inartfully pleaded," are held "to less stringent
standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* ,
9-10 (1980) *(*citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A court
must accord leniency to pro se parties and should review their filings
mindful of the fact that they do not have the benefit of legal training to
assist them in litigating their claims.  *Estelle v. Gamble,* 429 U.S. 97, 106
(1976); *see also Sageman v. United States*, No. 07-15351-BC, 2008 WL

14

360802, at *1 (E.D. Mich. Feb. 8, 2008). While pro se litigants are not entitled to unrestricted leniency, Washington has met the "basic" standards, and Washington's filings do not, contrary to the Plan's contention, "require a court to conjure allegations on [her] behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004).

### b. Plaintiff's Objections
#### i. Objection 1

Washington first objects to Judge Grey's determination that Sedgwick's denial of benefits between August 21, 2019, and November 3, 2019, was not arbitrary and capricious. Washington argues that during that period, her medication was adjusted and that those changes should be given time to be effective, and the three-week "partial hospitalization program" ("PHP") period from October 14 to November 1, 2019, is evidence of a significantly severe disability.

The main thrust of Washington's objection relates to Judge Grey's conclusion that it was "unclear from the [discharge] document how much time Washington spent in the PHP." ECF No. 32, PageID.943. Washington contends, in her objection, that the PHP in which she participated was "five days a week . . . 6 hours daily," and represents "the most intensive form of outpatient therapy and psychoeducation for treating and managing a mental illness." ECF No, 36, PageID.985.

Plaintiff Washington may not, however, introduce this kind of information at this stage of litigation. Even if Plaintiff Washington had

presented this information to Magistrate Judge Grey, he could not have considered it. *McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537, 540 (6th Cir. 2011) ("Judicial review of an ERISA benefit denial is based solely on the administrative record available to the benefit plan administrator at the time of the decision."). Moreover, it is particularly inappropriate for parties to introduce, in objections to a magistrate judge's report and recommendation, evidence or arguments that were not presented to the magistrate. *Murr v. United States*, 200 F.3d 895, 902 n. 1 (6th Cir. 2000). However, for the reasons explained below, upon de novo review the Court concludes that Sedgwick's analysis was arbitrary and capricious based on the record before it, even without the additional evidence Washington now seeks impermissibly to introduce.

### ii.  Objection 2

Second, Washington objects to Judge Grey's recommendation to remand this matter to Sedgwick for reconsideration. Washington claims the Sedgewick's decision-making process is arbitrary and capricious, making remand futile.

Upon finding that a plan administrator incorrectly denied benefits, a district court "may either award benefits to the claimant or remand to the plan administrator." *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 373 (6th Cir. 2009) (citation omitted). Where the "problem is with the integrity of the plan's decision-making process," rather than "that a claimant was denied benefits to which he was clearly

16

entitled," the appropriate remedy generally is remand to the plan administrator. *Shelby Cnty.*, 581 F.3d at 373 (internal marks and citation omitted). *Godmar v. Hewlett-Packard Co.*, 631 F. App'x 397, 407 (6th Cir. 2015) (award of benefits without remand is appropriate where record establishes the claimant is "clearly entitled to benefits").

In the Court's view, Magistrate Judge Grey correctly concluded the issues here lay with the integrity of the plan's decision-making. This is not a situation where the record demonstrates that Washington is clearly entitled to the benefits which she seeks, rather, remand to the plan administrator is necessary to ensure that a full and fair review is provided.

### c. De novo review of the two periods of denial
#### i. Washington's 2018 claim

As explained above in Section III.a.i, the Plan was not required to afford Washington's subjective complaints more weight than other medical evidence, but it may not discount or ignore them entirely. This Court's review of the record supports the conclusion that Sedgwick did take Washington's complaints into account, at least under the "extremely deferential" arbitrary and capricious standard of review. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014). Under that standard, the question is "whether a plan can offer a reasoned explanation, based on evidence" for its judgment, and whether that judgment "is the result of a deliberate, principled reasoning process," and

"is supported by substantial evidence." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006).

Here, the reports of both file reviewers appear to have taken Washington's reported symptoms into account. Doctor Tellioglu noted Washington's symptoms, but concluded that they were "not severe enough to require treatment in a higher level of psychiatric care," and therefore that Washington "should be capable of performing her work activities while continuing her psychiatric evaluation and treatments." ECF No. 9, PageID.516. Dr. Tellioglu further explained that there had been insufficient explanation of how these symptoms affected Washington's work. *Id.* Finally, Dr. Tellioglu noted a number of factors that militated against a finding of disability: there was "no evidence of altered sensorium, quantified cognitive dysfunction or loss of global functionality," and Washington's "[m]emory concentration and other cognitive abilities [were] not demonstrated to be impaired." *Id.* at PageID.517. Doctor Albers's report noted the symptoms of which Washington had complained to Doctor Jajo, but explained that there was "no objective data detailing abnormalities in [Washington's] day-to-day routine due to her psychiatric symptoms," and noted that a number of other results appeared to be normal. *Id.* at PageID.581-82.

The terms of the plan give the Plan administrator substantial discretion in determining whether a claimant is disabled, and a claimant bears the burden of providing evidence of a disability under the plan's

terms. *See McCandless v. Standard Ins. Co.*, 509 F. App'x 443, 447 (6th Cir. 2012) ("The Plan gave [the plan administrator] substantial discretion in awarding benefits, thus [claimant] bears the burden of proving the denial of benefits was arbitrary and capricious."); *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 700 (6th Cir. 2014) ("Plaintiff must prove by a preponderance of the evidence that he was 'disabled,' as that term is defined in the Plan."). The plan terms also explain that "in general, a diagnosis that is based largely or entirely on self-reported symptoms will not be considered sufficient to support a finding of Disability." ECF No. 9, PageID.690.

Ultimately, Sedgwick concluded that Dr. Jajo's notes provided insufficient evidence tying Washington's symptoms to her ability to function at work based on the conclusions of two file reviewers. Under the deferential applicable standard, the Court cannot conclude that the Plan abused its discretion in denying Washington's 2018 claim on that basis.

### ii. Washington's 2019 claim
#### 1. The period from June 16 through August 20

With respect to Washington's June 16, 2019, to August 20, 2019, claim, applying the de novo standard of review, the Court reaches the same conclusions that Judge Grey recommended. As to the reports of Dr. Acenas and Dr. Pritchett, upon which Sedgwick based its denial of benefits, these reports suffered from a number of infirmities. Further,

Washington submitted substantial evidence about her psychological condition.

As Judge Grey observed, Dr. Acenas based her conclusion, in part, on the observation that Washington had "not followed through with her treating provider's recommendation of individual psychotherapy." ECF No. 9, PageID.258. But the record showed that Washington was forced "to choose between medical treatments due to financial constraints." *Id.* at PageID.279. And Washington's treating physician specifically recommended that Washington undergo therapy "*when financially possible.*" *Id.* at PageID.281 (emphasis added). There is no indication that Dr. Acenas took this important fact into account in her review.

Dr. Pritchett's report, in turn, was subject to a number of internal inconsistencies. As Judge Grey observed, Dr. Pritchett concluded that Washington's approval for disability benefits from mid-May to mid-June was reasonable "to allow for the addition/efficacy of multiple medications." *Id.* at PageID.190. But for the mid-June to mid-August period, despite the fact that, during that period, Dr. Stone discontinued certain medications, started Washington on new medications, and adjusted the dosage of another medication, Dr. Pritchett nevertheless concluded that a finding of disability was unreasonable. *Id.* at PageID.266, 281. Further, Dr. Pritchett concluded that Washington's treatment plan during the June-to-August period "does not reflect the intensity of treatment associated with psychiatric disability from work."

But this was  the same treatment regimen Washington underwent during the May-to-June period, and Dr. Pritchett determined that a finding of disability *was* reasonable for that period.

Most important, however, Washington submitted substantial evidence about her psychological condition. She provided, as Judge Grey noted, notes from appointments with Doctors Rida and Stone detailing increasingly serious symptoms and increasingly intense medication regimens, *id.* at PageID.266, 281, 304-305, and a letter from Dr. Rida detailing a June 20, 2019, visit, which contained PHQ-9 scores indicating a "moderate-severe diagnosis of depressive disorder, which in [Washington's] case is chronic and recurrent" as well as the results of other psychological examinations. *Id.* at PageID.294. Critically, Dr. Rida's letter and other progress notes provided extensive detail about how Washington's condition affected her daily life and her work. For example, Dr. Rida's letter stated that Washington's anhedonia, physical anergia, and difficulty focusing and concentrating, would affect her ability to work. *Id.* at PageID.294-95. Dr. Rida opined that Washington was disabled because "her depressive symptoms are often too strong to overcome, thereby hindering her ability to perform her job properly," because "her symptoms can escalate to the point of mental and physical debilitation, due to forces and reasons outside her conscious control." *Id.* As another example, notes from a July 13, 2019 visit with Dr. Stone indicate a concern that Washington would be unable to handle the

21

ordinary stresses of her job, and when dealing with customers—as required by her job—might "breakdown on the phone," "cry," or "snap and yell" at customers. *Id.* at PageID.279.

The above-described infirmities in the reports compiled by Sedgwick's file reviewers, coupled with extensive evidence of Washington's mental state and the impact it would have on Washington's job performance provided by Dr. Stone and Dr. Rida, support the conclusion that Sedgwick's denial of benefits for the June 16, 2019 to August 20, 2019 period was arbitrary and capricious.

## 2. The period from August 21 through November 3

As to the August 21 to November 3, 2019, period, the Court also concludes that that Sedgwick's review was insufficient because it inappropriately discounted Washington's participation in a partial hospitalization program or "PHP."

Washington participated in a PHP for three weeks, and was discharged on November 1, 2019. ECF No. 9, PageID.190. A PHP appears to be a fairly drastic treatment option; indeed, in evaluating Washington's 2018 claim, Doctor Tellioglu based his conclusions partially on the fact that Washington's symptoms "were not severe enough to require treatment in a higher level of psychiatric care *such as [PHP] (partial hospitalization program)*." *Id.* at PageID.516 (emphasis added). Dr. Albers relied on a similar analysis. *See Id.* at PageID.582 ("there is

no indication that she is [sic] required treatment in a higher level of care").

In her report, Dr. Pritchett noted that Washington's participation in a PHP "would suggest worsening symptoms and need for a higher level of care." *Id.* at PageID.192. But Dr. Pritchett noted only that "documentation is needed to be able to certify all or part of this period." Indeed, rather than recommending denial for the August 21 to November 3 period, as she had with other time periods, Dr. Pritchett concluded that there was "insufficient documentation" to sustain a disability finding for that period. *Id.*

But Sedgwick's denial letter did not mention the PHP at all in its discussion of the June to November period, despite the fact that Washington spent three weeks of that time in the PHP. Rather for the period of June 16, 2019, to November 3, 2019, Sedgwick maintained that "there was no objective data that established the psychiatric symptom severity, or functional impact" and that Washington's "treatment plan (every 4-6 weeks) d[id] not reflect the intensity of treatment associated with psychiatric disability from work." *Id.* at PageID.165-66. At a minimum, it would seem impossible for Washington to work during her participation in the PHP simply due to the daily obligations imposed by the PHP. And in the weeks immediately prior to the PHP, Washington's symptoms necessarily must have been severe enough to make participation in the PHP a recommended option. That Sedgwick did not

23

mention or credit Washington's participation in the PHP during that time—a form of treatment the absence of which was apparently a major, if not dispositive, factor in Dr. Tellioglu's earlier analysis—and characterized Washington's treatment plan as only requiring treatment "every 4-6 weeks" without accounting for the PHP, supports the conclusion that Sedgwick's analysis for that period was arbitrary and capricious.

## IV.   CONCLUSION

Having carefully reviewed the record, the Court concludes that Magistrate Judge Grey's Report and Recommendation is **ACCEPTED IN PART AND REJECTED IN PART**. Plaintiff's motion for summary judgment (ECF No. 23) is **GRANTED IN PART AND DENIED IN PART**, and Defendant's motion for summary judgment (ECF No. 22) is **GRANTED IN PART AND DENIED IN PART**.

For the reasons indicated above, the Report and Recommendation is **REJECTED** with respect to Washington's claim for benefits from July 16, 2018 to September 9, 2018, and summary judgment is **GRANTED** in Defendant's favor on Washington's claim for this period.

With respect to Washington's claim for benefits from June 16, 2019 to August 20, 2019, the Report and Recommendation is **ACCEPTED AND ADOPTED**. Washington's claim for that period is **REMANDED** to Sedgwick for full and fair consideration.

With respect to Washington's claim for benefits from August 21, 2019 to November 3, 2019, the Report and Recommendation is **REJECTED**. Washington's claim for that period is **REMANDED** to Sedgwick for full and fair consideration.

**IT IS SO ORDERED.**

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

DATED this 29th day of September 2022